STATE of Texas, Appellant,

v.

Willie MERRILL, a feme sole, and Tom Gray, Appellees.

No. 5334.

Court of Civil Appeals of Texas.

El Paso.

Nov. 18, 1959.

Rehearing Denied Dec. 9, 1959.

John H. Holloway, Houston, for appellant.

DeLange, Hudspeth & Pitman, Albert J. DeLange, C. M. Hudspeth, Eugene J. Pitman, Cutrer & Lamb, Houston, for appellees.

———◆———

Morgan Nesbitt, James H. Roger, Asst. Attys. Gen., Will Wilson, Atty. Gen., for appellant.

Wm. H. Earney, H. O. Metcalfe, Marfa, William L. Kerr, Turpin, Kerr & Smith, Midland, for appellees.

ABBOTT, Justice.

This suit was brought by the State of Texas on behalf of the Texas State Parks Board, praying for an injunction permanently to restrain defendants from padlock-ing gates leading into a portion of the State Park in the Davis Mountains, located in Jeff Davis County. From a judgment denying such restraining order the State of Texas has perfected this appeal.

The facts leading up to the suit are: By warranty deed, the predecessors in title to defendants deeded to the State of Texas 200 acres in Jeff Davis County, properly described by metes and bounds, reserving to the grantors the perpetual grazing rights to said lands, and conditioned upon not more than ten acres of said tract being fenced, such fenced area to be located so as not to interfere with movement of sheep up and down Keesey Canyon. This warranty deed is dated November 18, 1933.

On January 18, 1934, the predecessors in title to defendants executed the following lease:

"The State of Texas ⎫
County of Jeff Davis ⎭

Know All Men By
These Presents:

"This indenture is made this the 18 day of Jan. A.D., 1934 between J. W. Merrill and R. K. Merrill, of the County of Jeff Davis, State of Texas, parties of the first part, and the State of Texas, party of the second part.

"Witnesseth

"That the parties of the first part, for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by party of the second part, have demised and leased to the party of the second part all those premises situated in said county, being 1540.35 acres, more or less out of Sections 657, 1300, 1301, 96, 692, and survey 101. The following description includes 200 acres deeded to the State Park Board out of Sections 657, 96 and 101. (Description by metes and bounds).

"To Have And To Hold the said above described premises with all the

privileges and appurtenances belonging to the same unto the party of the second part from the date hereof for the term of ninety-nine years next ensuing. This agreement to be entered of record; and the covenants and agreements herein contained shall run with the land described and shall be binding on the lessors and their heirs and assigns. And the lessors represent that no part of said lands above described constitute a homestead or any part thereof of either of them. It is hereby expressly understood that this lease is made for the exclusive use of all of the above described lands by the party of the second part for park purposes and for the construction only on high prominent point of rest houses and lookout houses, and trails, and any and all improvements which are proper and necessary in the use and quiet enjoyment of said lands for said purposes, and that said lands are to be used by the public and by the citizens of the State of Texas in the quiet enjoyment thereof. It is further hereby expressly agreed and understood that both parties of the first and parties of the second part will prohibit any commercial enterprise of any kind or character whatsoever and or residence or cottage construction within or on the above described lands leased. It is further expressly understood and agreed that for and in consideration of the execution of this lease the parties of the first part have the exclusive grazing rights on all of the above described lands leased, but that such grazing rights on the part of parties of the first part shall be limited to grazing sheep unless sheep grazing becomes unprofitable, then party of the 1st. part reserves the right to graze cattle on said land nine months in the year, allowing party of the second part the right to choose 3 consecutive months when land shall be free of cattle. It is further understood and agreed that as a part of the consideration of this lease the party of the second party hereby agrees to sink two wells to the ordinary stock water strata, erect and equip two windmills with towers and ordinary appurtenances, and two water storage tanks, the capacity of each of these tanks, to be equal to the capacity of the present water tank now located in the CCC Camp on said lands, one of such well, windmills, and tanks to be located at the west end of the area to be so fenced and in Keesey Canyon, the other such well, windmill, and tank to be located near Lympia Creek on the east side of the present state highway. It is further hereby expressly understood and agreed that the party of the second part shall not be held liable for waste, damage, or destruction of property committed by persons who may hereafter use said lands as a public park, and that said wells, windmills, and tanks are not to be maintained at the expense of party of the second part. It is further hereby expressly agreed and understood that as a part of the consideration for the execution of this lease party of the second part obligates itself to build a sheep proof fence with cedar post 20 feet apart and 5 feet in height, thirty inch mesh wire, stretched thereon to be of 30″ inch height, and said fence to have 3 strands of barbed wire stretched above said sheep fence 6 & 12 inches apart said fence to be maintained by parties of the first part. It is also expressly understood and agreed that the above and foregoing covenants, agreements and considerations shall constitute the whole of the consideration for the execution of this agreement, and that the party of the second part is not end will not under any circumstances become indebted to the parties of the first part for rents on the said lands.

or any other sums or the discharge of any other obligations whatsoever during the term of this lease.

"In witness whereof, the parties have hereunto set their hands and seals the day and year above written.

"J. W. Merrill

R. K. Merrill
Parties of the First Part

Texas State Parks Board
For the State of Texas
By D. E. Colp, Chairman
Members of the State
Parks Board."

"The State of Texas }
County of Jeff Davis }

"Before me, the undersigned authority in and for Jeff Davis County, Texas, on this day personally appeared J. W. Merrill and R. K. Merrill, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this 18 day of Jan. A.D., 1934.

"W. D. Bloys, Notary Public,
Jeff Davis County, Texas."

Prior to this suit, defendants padlocked all of the gates leading into the leased tract and, as a result, the State of Texas brought this suit, praying the court to order such padlocks to be removed.

Defendants answered with a general denial and specifically answered denying any violations of the lease agreement, and further prayed for a rescission of the lease for failure of consideration; and, in the alternative prayed they be allowed the exclusive grazing rights without interference.

The trial court, without a jury, considered the pleadings and documents and heard the testimony and rendered judgment as follows:

1. The State take nothing by its suit, denying the injunction;

2. No failure of consideration; hence no rescission of the lease;

3. Giving the Texas State Parks Board the right to use the properties for park purposes, but ordering that they not knowingly permit livestock to come upon or use said lands except that livestock belonging to defendants and those who succeed them in interest;

4. Defining the rights of the Texas State Parks Board to the premises as use of the premises only, such rights as might be exercised through entry to and from the land through properly constructed cattleguards, pedestrian turnstiles and pedestrian walkovers, erected over or properly installed in the fences. The cost of such to be the cost of the State of Texas, and defendants were not to be responsible for the cost of construction or maintenance;

5. Defendants had exclusive grazing rights for sheep or cattle, as per lease agreement, for nine months of the year, allowing the State Parks Board to choose three consecutive months in any given year when said land should be free of cattle;

6. The State of Texas was ordered not to permit any commercial enterprise of any nature on said lands;

7. Affirming the rights of the State of Texas and the defendants expressed in the deed to the 200-acre tract, and also the lease agreement expressed as to the 1340 acres.

The judgment contained other provisions that we do not believe necessary to discuss here.

From the judgment, appellant, State of Texas, brought these eleven points of error. Point One disposes of Points 2, 3, 4, 5 and 6, so they will not be discussed.

### "Point One

"The trial court was without jurisdiction to adjudicate the rights of the parties under the deed conveying the 200 acre tract in fee because there are no pleadings invoking the court's jurisdiction with respect to such deed or the area described therein.

      \*     \*     \*     \*     \*     \*

### "Point Seven

"The trial court erred in denying the State the relief prayed for and in failing to hold that the least for 'park purposes' by implication included the right of the public to ride horses in the leased area.

### "Point Eight

"The trial court erred in holding that the reservation of grazing rights in the lease as a matter of law precluded the general public from riding horses in the leased area.

### "Point Nine

"The trial court erred in denying the State the injunctive relief prayed for and in holding that defendants are permitted to maintain locked gates for the reason that such holding effectively and materially impairs the use of the leased area for 'park purposes' and is contrary to the terms of the lease.

### "Point Ten

"The trial court erred in holding that the only entry by the public into the leased area shall be by means of cattle guards, pedestrian turnstiles and pedestrian walkovers because such limited entry is not provided for in the lease and is contrary to the terms of the lease and the use of the land for park purposes.

### "Point Eleven

"Alternative to Point Ten, should it be held that the only entry permitted the State and the public under the lease is by the limited means referred to in Point Ten, the trial court erred in decreeing that the cost of installation and maintenance of such means should be borne by the State because there is no provision therefor in the lease contract and in failing to hold that since the limited access is solely for the benefit of appellees the cost should in law and equity be borne by them."

Appellees, defendants below, brought one cross-point:

### "Defendants' Cross-Point One

"Defendants are entitled to have the lease rescinded and cancelled because of the failure of the consideration therefor."

and answered with six counter-points.

■ We believe that the first six points of error complained of in appellant's brief can be considered together. All of the points concern the questions of the trial court's jurisdiction to consider and rule upon the deed given to the two hundred acres. A careful examination of the pleadings reveals that the deed complained of was not plead by either party. It is true that a copy of the deed was put into evidence, but only as a descriptive measure to correctly identify the park area concerned. The two hundred deeded acres lie entirely within, and are surrounded by, the leased area. The reference contained in the lease itself is descriptive only. There is no expressed or implied consent in the record of the parties to submit the deed to the jurisdiction of the court for determination. Because of these reasons, we believe that the trial court has no juris-

diction as to the deeded land. 25 Tex. Juris., 478, sec. 100 (and cited cases); Rule 67, Texas Rules of Civil Procedure; City of Ft. Worth v. Gause, 129 Tex. 25, 101 S.W.2d 221.

Having found that point of error number one must be sustained, it is unnecessary to consider Points 2, 3, 4, 5 and 6, as they are all based upon the trial court's rulings as to the deed.

Points 7, 8, 9 and 10 are grouped together by appellant and shall be so treated here. These points complain of the failure of the trial court to grant to the State Parks Board the use of the leased area for "park purposes"; and, also, that the judgment granted precluded the general public from riding horses as a violation of the grazing rights retained by the appellants.

■ The grantors of the lease retained the "exclusive grazing rights" for the term of the lease. These rights are further defined, in that the Parks Board had a right to choose any three consecutive months in a given year in which the land shall be free of cattle. It was stipulated by the parties "that grazing rights carry with it the right to confine animals being grazed to the specific area involved, to the particular pasture area involved." Testimony showed that gates were left open, when not locked, allowing livestock to wander onto the highway in violation of the State laws, and that warnings had been given appellees by the Highway Patrol that this would not be permitted. Witnesses also testified that horseback riders frightened the livestock, and it was not good ranching practice to permit horseback parties to ride in stocked pastures. The lease itself permits the Parks Board to designate three months of the year when appellees are to move their livestock from the leased area, and we believe it was the intent of the parties that the leased area was to be open for "park purposes", the use limited only by the terms of the lease during that period of time; and also that the parties

intended that the "exclusive grazing" rights should be effective the other nine months of the year. While "grazing rights" have not been clearly defined in this State, we believe that, by the terms of the lease itself and by the stipulation of parties to the suit, appellees shall, as found by the trial court, have the right to keep the gates locked to the exclusion of other livestock or to any other traffic during the period of nine months, excepting that which might be accomplished without interference to the exclusive grazing rights of appellees. In this connection, appellant's Point of Error No. 10 complains of the court's ruling that the only entry into the leased area should be by means of cattleguards, pedestrian turnstiles and pedestrian walkovers, as such limited entry is not provided for in the lease agreement. With this contention we agree, and sustain Point of Error Number Eleven. The means of entry is the burden of the State Parks Board, and the cost of construction of those means should be that of the State of Texas. We cannot write anything into the lease agreement, nor shall we; but, in view of our holding as to the exclusive grazing rights of appellees, and their right to padlock the gates for nine months of the year, we believe it is incumbent upon the State Parks Board to effect some method of entry into the leased area consistent with appellees' grazing rights as herein defined. We believe this answers appellant's Point of Error No. 11.

The State of Texas cites numerous cases defining "park purposes" and the uses incident thereto. We believe the limiting language of the lease itself precludes any of the general definitions contained in their brief. The limitations in the present case are clearly set out in the lease.

■ Appellees contend, in their counterpoint, that the lease should be declared null and void for failure of consideration. In the lease the State agreed to drill and equip two water wells and also to build a described type of fence. The location or

length of the fence was not mentioned. The evidence shows the water wells were drilled and equipped. The outside perimeter of the leased area is fenced. The evidence shows parts of the fence were erected by the CCC of the Federal government, part by neighbors on their boundaries, part by State agencies, and part by the appellees. There is no evidence that any complaint was ever made concerning the fencing by appellees from the date of the lease, in 1934, until this suit. Appellees do say that the State hid behind its cloak of immunity in this matter, but there is no evidence that any application was made to bring suit against the State. We believe appellees failed to repudiate or insist within a reasonable time on cancellation of the lease, and have given no reasonable excuse for the delay. 7 Tex.Juris., 943, sec. 37, Cancellation of Instruments, and cited cases. We believe the trial court had sufficient evidence to support its findings as to sufficient consideration validating the lease.

Having discussed the points of error and counter-points, we hold:

The trial court's judgment concerning the deeded two hundred acres is reversed and rendered, in that the trial court had no jurisdiction.

Appellant is denied its injunction requesting the removal of padlocks from the gates of the leased area, except as to the three consecutive months of the year selected by appellant, and during those three months the padlocks shall be removed; and this portion of the trial court's judgment is reversed, and rendered in part and affirmed in part, so as to effect this holding.

The trial court's judgment as to the construction of cattleguards, pedestrian walkovers or pedestrian turnstiles is reversed and rendered, in that this was not part of the lease agreement.

The remainder of the trial court's judgment, not specifically reversed and rendered in the foregoing paragraphs, is affirmed.